IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| PHYLLIS GAIL NIX, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 11-G-1811-E |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Phyllis Gail Nix, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;

(2)  whether she has a severe impairment;

(3)  whether her impairment meets or equals one listed by the Secretary;

(4)  whether the claimant can perform her past work; and

(5)  whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The

Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

### THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and 416.929;  Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a]

claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question

which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the

need to expedite disability claims." Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 47 years old at the time of ALJ Carol G. Moore's opinion. Her alleged onset date is October 18, 2006. The ALJ found that the plaintiff has the following severe impairments: hypertension; carpal tunnel syndrome; cervical disc disease with mild stenosis; and lumbar radiculopathy. [R. 16].  The ALJ found the plaintiff could perform a reduced range of light work, and based on the VE's testimony, found that she could perform her past relevant work as a sewing machine operator, housekeeper, and production assembler. [R. 18-19].

The record reflects that on June 14, 2006, the plaintiff began treatment with Wael Hamo, M.D., a board certified neurologist.  She complained of neck pain and upper back pain, but denied any history of low back pain or headache. [R. 212].  Motor strength exam, gait and sensory exam were within normal limits. [R. 213].  Dr. Hamo's impression was neck pain with pain distribution down to both arms, more prominent on the right.  He planned a cervical spine MRI and EMG study. [R. 214].  The EMG was abnormal with moderate to severe, chronic mildly active right median nerve entrapment neuropathy at

the wrist, consistent with moderate to severe carpal tunnel syndrome on the right. [R. 210]. The left wrist showed mildly active left median nerve entrapment neuropathy, again consistent with carpal tunnel syndrome. Id. Nerve block injections, skelaxin and lidoderm patches were administered and prescribed on June 21, 2006. [R. 209]. By July 26, 2007, symptoms were improved, but she was now complaining of low back pain. Straight leg raising was positive on the right side around 70 degrees. [R. 208]. Dr. Hamo administered a trigger point injection and sciatic nerve block. Id.

On August 28, 2006, motor strength and gait were still within normal limits, but she still had tenderness in both wrists. [R. 203]. By October 11, 2006, motor strength and gait were still normal, but she had a positive SLR[1] on the right at 60 degrees. [R. 202]. Dr. Hamo performed an EMG study of the lower extremities on October 18, 2006. The study was abnormal as it showed mild chronic, mildly active left peroneal nerve entrapment neuropathy at the fibular head, with no evidence of right peroneal neuropathy. [R. 200]. The study was otherwise normal. On January 10, 2007, Dr. Hamo noted that her carpal tunnel symptoms were negative, but she was still complaining of low back pain and right leg pain. SLR was positive on the right. [R. 199]. Dr. Hamo continued trigger

---

[1] A positive SLR (Straight Leg Raise test) is recognized by the regulations as a clinically appropriate test for the presence of pain and limitation of motion of the spine. (See Listing 1.00(B), ¶5) The SLR test is also known as Lasègue's sign: "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed. This distinguishes the disorder from disease of the hip joint." Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

point injections and sciatic nerve blocks on January 10, 2007, July 11, 2007, and July 25, 2007.

A July 27, 2007, MRI of the plaintiff's cervical spine showed a posterior bulge of the disc and osteophyte formation with very mild spinal stenosis and foraminal encroachment at C3-4 and 4-5; and a posterior bulge of the disc with mild spinal stenosis but no foraminal encroachment at C5-6. [R. 191].

On August 20, 2007, she was seen at the behest of the Commissioner by Ammar S. Aldaher, M.D., for a consultative physical examination. Dr. Aldaher said, "During the exam, I saw some trigger point tenderness at the mid back." [R. 215]. He also noted lumbosacral spasm, but his neurologic exam was within normal limits. [R. 216]. His impression was back pain, possible fibromyalgia and hypertension, and concluded:

> I believe the patient is able to do work related activities such as sitting, standing, walking, lifting, carrying and handling objects. Hearing and speaking are intact.

Id.

Dr. Hamo referred the plaintiff to Mohammed A Mohiuddin, M.D., for pain management on July 31, 2007. SLR was positive on both sides, with tenderness in the paraspinal muscles in the lower thorax and upper lumbar area. [R. 241]. Dr. Mohiuddin diagnosed lumbar radiculopathy, and treated her from July 2007 through March 2009 with a series of lumbar epidural steroid blocks. [R. 241-275].

On May 28, 2009, Dr. Hamo completed a form in which he stated the plaintiff has chronic and continuous moderately severe pain as a result of her medical condition. [R. 284].  Objective signs were muscle spasm, the MRI and the EMG study.  The plaintiff would need to rest frequently during the day to relieve pain.  Side effects of the pain and pain medication would be reduced concentration and attention, drowsiness and dizziness.  Id..  Dr. Hamo stated she would likely have to miss three or more days a month from work.  Id.  Dr. Hamo also completed a Physical Capacity Evaluation in which he estimated the plaintiff could sit for one hour at a time, and stand and walk for less than one hour at a time. [R. 285].  He also estimated the plaintiff could sit for a total of seven hours in an eight-hour workday, and stand and walk for less than one hour in an eight-hour workday. Id.

The ALJ gave "very little weight" to Dr. Hamo's opinion because it is "not supported by the medical evidence as a whole."  [R. 17].  No further discussion was given to Dr. Hamo's opinion.  The ALJ also stated that the plaintiff's daily activities "suggest she is not limited to the degree noted by Dr. Hamo."  Id.  In applying the Eleventh Circuit's pain standard, the ALJ assessed the plaintiff's credibility:

> At the hearing the claimant testified she has sharp pain in her mid back area which is aggravated by bending or lifting.  She stated she has been told that she has a pinched nerve in her knee.  She reported she experiences knee pain when climbing stairs.  To help relieve pain she reported she lies down and sleeps.  She provides care for her grandchildren currently ages 11 and 8, and she is their legal guardian.  Activities of daily living consist of preparing the children's breakfast, watching television, washing clothes, washing dishes, and listening to music.  Her mother lives next door and she visits with her.  She attends church, goes grocery shopping, and has a

10

>driver's license.  She stated her children and grandchildren visit her. She reported her blood pressure is fairly well controlled.  She stated she can walk 1 block; stand 15 minutes; sit for 2 hours if she can shift positions; and lift/carry 15 to 20 pounds.  She stated she left her last job because of 11 absences for doctor visits.

[R. 18-19].

The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true.  The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain.  The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability.  Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997).  As has been noted:

>[S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee.  Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days.  <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u>. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.  In Easter v. Bowen, the court observed as follows:

11

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world.  Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence.  It follows, therefore, that claimant's pain testimony has been accepted as true."  Hale, at 1012.

The ALJ then gave great weight to the Commissioner's consultant, Dr. Aldaher:

> The claimant has stenosis of the cervical spine which is described as mild, and she has lumbar radiculopathy.  The consultative examination revealed no neurological deficits and range of motion was intact. I note that she is able to drive, can go to school for meetings, attend church and prepare meals for her family.  I give great weight to the consultative examination performed by Dr. Aldaher, who found the claimant is able to work (Exhibit 6F).

[R. 19]. Despite the ALJ's characterization of Dr. Aldaher's report that the plaintiff "is able to work," Dr. Aldaher actually said she "is able to do work related activities such as sitting, standing, walking, lifting, carrying and handling objects." [R. 216]. He made no estimation as to how long she can perform these activities. The opinion of Dr. Aldaher is not inconsistent with the opinion of the plaintiff's treating neurologist, Dr. Hamo.

      The ALJ's reasons for rejecting the testimony and opinion of the plaintiff's treating physician are not supported by substantial evidence. Dr. Hamo is a specialist in the field of neurology, and his opinion is entitled to more weight in this area.[2] The supporting testing performed by Dr. Hamo also entitles it to greater weight.[3] Similarly, the Commissioner's consultant, Dr. Aldaher, palpated muscle tenderness and spasms, which are objective evidence of pain itself. The relationship between a claimant's subjective symptoms and medical evidence is explained in Social Security Ruling 96-7p, <u>Disability Claims: Assessing the Credibility of an Individual's Statements</u>, which contains the following:

> Symptoms cannot be measured objectively through clinical or laboratory diagnostic techniques; <u>however, their effects can often be clinically observed</u>. The regulations at 20 CFR 404.1529(c)(2) and 416.929(c)(2)

---

[2] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5)

[3] See 20 C.F.R. § 404.1527(d)(3)(well supported opinions entitled to more weight). Dr. Hamo's treatment notes include an MRI which showed a posterior bulge of the disc and osteophyte formation with very mild spinal stenosis and foraminal encroachment at C3-4 and 4-5. [R. 191]. His treatment notes also contain positive SLR tests and abnormal EMG studies.

> provide that objective medical evidence "is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of" an individual's symptoms and the effects those symptoms may have on the individual's ability to function.  The examples in the regulations (reduced joint motion, muscle spasm, sensory deficit, and motor disruption) illustrate findings that may result from or be associated with, the symptom of pain.  When present, these findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects.

SSR 96-7p at 6 (emphasis added).

Moreover, the medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations.  See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in  Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of  claimant's treating physicians:  "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary."  Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity;  however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original).  The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings."  Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

The ALJ failed to properly refute the opinion of the plaintiff's treating physician, Dr. Hamo.  At the ALJ hearing, the vocational expert testified that a person with the plaintiff's limitations as diagnosed by Dr. Hamo could not perform any job that exists in the national economy. [R. 47].

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.

DONE and ORDERED 7 March 2012.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.